**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| JASON D VALLEY, | ) | CASE NO. 5:21-CV-00438-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| Defendant, | ) | |

## I.     Introduction

Plaintiff, Jason Valley, seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 13). Because the ALJ followed proper procedures and her findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying Valley DIB.

## II.     Procedural History

On March 6, 2019, Valley filed an application for DIB, alleging a disability onset date of December 8, 2016. (ECF No. 12, PageID #: 258). The application was denied initially and upon reconsideration, and Valley requested a hearing before an administrative law judge ("ALJ"). (ECF No. 12, PageID #: 188, 195, 202). On June 23, 2020, an ALJ held a hearing, during which Valley, represented by counsel, and an impartial vocational expert testified. (ECF No. 12, PageID #: 119). On August 12, 2020, the ALJ issued a written decision finding Valley was not

disabled. (ECF No. 12, PageID #: 85). The ALJ's decision became final on January 11, 2021,

when the Appeals Council declined further review. (ECF No. 12, PageID #: 79).

On February 25, 2021, Valley filed his Complaint to challenge the Commissioner's final

decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 15, 18, 20).

Valley asserts the following assignments of error:

> (1) The appointment of Andrew Saul as Commissioner of the
> Social Security Administration violated the separation of powers.
> As such, the decision in this case by an ALJ who derived her
> authority from Andrew Saul was constitutionally defective.
>
> (2) The ALJ committed harmful error when she failed to find that
> Valley satisfied the criteria of a Listing at Step Three of the
> Sequential Evaluation. In the alternative, the ALJ's RFC erred
> when she failed to consider the effect of the combination of
> Valley's severe impairments on his ability to engage in substantial
> gainful activity on a full-time and sustained basis.

(ECF No. 15, PageID #: 1649).

## III.    Background

### A.        Relevant Hearing Testimony

Valley testified to the following at his hearing. He has a driver's license but has not

driven for two or three years. (ECF No. 12, PageID #: 127). Valley worked as a self-employed

painter from his alleged onset date in 2016 until February 2019 when he stopped working

completely. (ECF No. 12, PageID #: 128–29). The amount he worked declined during that time

period. (ECF No. 12, PageID #: 128). Valley cannot work due to seizures and headaches. (ECF

No. 12, PageID #: 133). His seizures have never stopped, and he has at least one or two seizures

a month, and sometimes four or five. (ECF No. 12, PageID #: 134). There was even a time he

would have ten to fifteen seizures in a row. (ECF No. 12, PageID #: 133). When he has a seizure,

he cannot remember anything, he is sore, and has a hard time walking after. (ECF No. 12,

PageID #: 133, 135). The medications Valley takes contribute to the problem as they cause him to lose his balance and fall. (ECF No. 12, PageID #: 133). Certain medications have also caused side effects of panic attacks, being unable to function, memory issues, and stuttering. (ECF No. 12, PageID #: 135–36). His current medication causes dizziness and stuttering. (ECF No. 12, PageID #: 136). Valley also "battles" severe headaches and anxiety and has "a hard time holding [himself] together." (ECF No. 12, PageID #: 133). He is taking medication for anxiety that is "helping some." (ECF No. 12, PageID #: 136).

### B.     Relevant Medical Evidence

The ALJ summarized Valley's health records and symptoms:

> In terms of the claimant's alleged epilepsy, he was diagnosed with focal epilepsy of the left hemisphere, on February 1, 2019 (3F/9). Diagnostic imaging of the claimant's brain, dated October, 11, 2017, indicated slight thickening of the cortex, with a hyper-intensity from the cortex to the ventricular lining, but otherwise unremarkable findings (3F/31). Electroencephalographic testing, dated October 2, 2017, indicated mild, diffuse, left temporal dysfunction, but no eleptiform activity (3F/32). This finding was replicated on August 29, 2019 (12F/41), and read as within normal limits (15F/7). . . .
>
> Diagnostic scanning of the claimant's head, on June 18, 2019 (7F/27-28), July 8, 2019 (7F/31), and August 8, 2019 (17F/42-43), has remained reassuringly normal.
>
> The claimant has been prescribed various regimens of prescription medications intended to address these impairments (1E/5), (8E/9), (26F/15). In reports to the Agency, the claimant has described multiple and significant side effects from these medications (3E/7), (6E/7), (8E/9). However, his initial reports of side effects to his prescribers occurred in the setting of noncompliance with their use and dosages (7F/46), (10F/3). Prior to this, he reported tolerating his medications without issue (3F/14, 13, 3).
>
> Clinical examinations included in the record have consistently, albeit not universally, reported either mildly adverse, or benign findings, including one dated May 5, 2018, which indicated that the claimant was well-appearing and comfortable, with no cranial

nerve deficits, normal coordination, gait and reflexes (2F/3-4), one dated June 8, 2019, which indicated that the claimant was not ill-appearing, or in distress, exhibited no cranial nerve deficits, normal strength, coordination, and no sensory deficit (7F/54), or one dated January 29, 2020 [his most recent visit to a neurologist], which indicated mild psychomotor slowing, but normal, clear speech and language, intact extra-ocular muscles, with no nystagmus or diplopia, no dysmetria, a normal gait and negative Romberg (20F/13).

Treatment records indicate a total of nine convulsions, across four days, occurring between October 2017 and March 2018 (3F/14). There is a break-through seizure documented in May 2018 (2F/5). Thereafter, the first clearly documented seizure occurs in July 2019 (7F/38); however, this occurred in the setting of, at best, partial compliance with medications, as the claimant was adjusting his own medication dosages (7F/33, 39). This tendency has continued, with sub-therapeutic medication levels noted on blood testing (20F/4). Between May 2018 and July 2019, the claimant reported a seizure-free period of six months (8F/1), about two years (7F/45), but has also reported he is unable to say (9F/16). A seizure was reported in September 2019 (15F/3), but subsequent treatment records still report the last clear seizure has having occurred in July 2019 (17F/84). The claimant's most recent treatment for seizures occurred in January 2020. A note from this visit indicates the last possible seizure as occurring in November 2019, but the provider is unsure (20F/12). During the period from October 2017 to March 2018, treatment was initiated, medications changed and dosages adjusted. From March 2018 until the date of this decision, and presupposing the accuracy of seizures as reported, there have been four seizures. Going strictly by the treatment record, there have been two, in May 2018 and July 2019. The seizure occurring in July 2019 occurred in the setting of non-compliance with treatment. There is cause for concern regarding the reports provided by the claimant and his girlfriend. Continuous electroencephalographic monitoring, between August 29, 2019 and August 31, 2019, did not indicate eleptiform changes, despite three reported episodes by the claimant (12F/43). Continuous electroencephalographic monitoring, between October 8, 2019 and October 16, 2019, did not indicate eleptiform changes, even though the claimant's medication were withdrawn entirely (17F/84).

In terms of the claimant's alleged migraine headaches, he reported a history of migraine headaches to the consultative examiner (6F), resulting in a diagnosis of tension headache vs. migraine headache (6F/5). He was diagnosed with a headache disorder on July 8, 2019

4

(7F/43). . . .

The claimant's initial attempt to seek focused treatment for this impairment did not occur until September 27, 2019 (16F/17). It resulted in referral to an ears, nose, and throat specialist (16F/18) [with which the claimant has yet to follow-up], and a diagnosis of sinusitis and allergic rhinitis (16F/18). This ambivalence is found elsewhere in the record, as his headaches have been assessed as of unclear etiology (17F/85), and associated with sinus congestion (3F/3), (8F/2), and neck tenderness (6F/5).

Diagnostic scanning of the claimant's head, on June 18, 2019 (7F/27-28), July 8, 2019 (7F/31), and August 8, 2019 (17F/42-43), has remained reassuringly normal.

Lumbar puncture, dated July 8, 2019, was likewise unremarkable (7F/43).

Any of the claimant's various regimens of anti-epileptic drugs (1E/5), (26F/15) might be expected to have a beneficial effect on his headaches, but at last report (26F/15), and throughout the record (1E/5), (8E/9), he has not used a regimen of medications discernibly, directly, related to migraine headaches.

Clinical examinations included in the record have consistently, albeit not universally, reported either mildly adverse, or benign findings, including one dated May 5, 2018, which indicated that the claimant was well-appearing and comfortable, with no cranial nerve deficits, normal coordination, gait and reflexes (2F/3-4), one dated June 8, 2019, which indicated that the claimant was not ill-appearing, or in distress, exhibited no cranial nerve deficits, normal strength, coordination, and no sensory deficit (7F/54), or one dated January 29, 2020 [his most recent visit to a neurologist], which indicated mild psychomotor slowing, but normal, clear speech and language, intact extra-ocular muscles, with no nystagmus or diplopia, no dysmetria, a normal gait and negative Romberg (20F/13).

In terms of the claimant's alleged degenerative disc disease of the lumbar spine, and mild degenerative changes of the left knee, radiographic study of the lumbar spine, dated May 22, 2019, indicated moderate degenerative changes at the L3-4 joint, including spurring, endplate sclerosis and disc space loss, but was otherwise unremarkable. Radiographic study of the left knee, dated May 22, 2019, indicated mild degenerative changes of the medial compartment only, and was otherwise unremarkable (6F/1). . . .

5

In keeping with the claimant's report that his knee and back pain is not chronic (6F/3), the record shows that he has followed no regular course of treatment, whether conservative in nature, as by a regimen of physical therapy, or more invasive, as by a regimen of formal pain management.

He does not follow (26F/15), and has not discernibly followed (1E/5), (6E/7), any regimen of prescription medication in chronic fashion.

Clinical examinations included in the record have consistently, albeit not universally, reported either mildly adverse, or benign findings, including one dated May 5, 2018, which indicated normal range of motion of the lower extremities, with no focal weakness, normal gait and reflexes (2F/3-5), or one dated May 22, 2019, which reported slight crepitus of the bilateral knees, but normal range of motion of the knees and lumbar spine, normal gait, normal reflexes, sensory function, and strength (6F). . . .

In terms of the claimant's alleged psychological disorders, he was diagnosed with neurocognitive disorder and adjustment disorder, each on May 9, 2019 (5F/6), and with major depressive disorder and generalized anxiety disorder, each on February 18, 2020 (21F/12). . .

The claimant follows a regimen of psychotropic medications intended to address these impairments (6E/7), (8E/9), (26F/15), used with side effects of tiredness or fatigue (6E/7), (8E/9), which he reports as unhelpful (27F/12).

Mental status examinations included in the record have consistently, albeit not universally, reported either mildly adverse, or benign findings, including one dated May 9, 2019, which indicated that the claimant presented as mildly aphasic, with a restricted affect, and borderline intellectual function, but also with appropriate dress and fair hygiene, composed and appropriate behavior, a linear thought process, good comprehension, no affective instability, normal psychomotor activity, no overt signs of anxiety, no delusions or hallucinations, no suicidal or homicidal ideation, mild deficit of short-term memory, normal attention, and typical levels of insight and judgment (5F/3-4), one dated December 17, 2019, which reported that the claimant presented with a blunted affect, moderate depression and severe anxiety, but also with casual grooming, cooperative behavior with good eye contact, normal psychomotor activity and speech, a logical thought

process, average fund of knowledge, no delusions or hallucinations, no suicidal or homicidal ideation, automatic judgement, intellectual insight, intact memory, fair attention and concentration (21F/3-4), or one dated June 5, 2020, which reported that the claimant presented with a depressed mood, and flat affect, but also as open and cooperative, full oriented, with speech within normal limits, a logical and goal-oriented thought process, no delusions or hallucinations, no suicidal or homicidal ideation, normal memory, attention and concentration, and with fair insight and judgment (27F/19).

(ECF No. 12, PageID #: 94–98).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 4. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, mild degenerative changes of the left knee, epilepsy, migraine headaches, major neurocognitive disorder due to seizures, without behavioral disturbance [hereinafter, collectively, neurocognitive disorder"], adjustment disorder with mixed anxiety and depressed mood [hereinafter, collectively "adjustment disorder"], major depressive disorder and generalized anxiety disorder (20 CFR 404.1520(c)).

> 5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

> 6. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant may frequently stoop, kneel, crouch, may occasionally crawl, climb ramps and stairs, but may never climb ladders, ropes or scaffolds; the claimant must avoid concentrated exposure to noisy environments, and all exposure to unprotected heights, dangerous moving machinery, and commercial driving; the claimant is limited to the performance of simple, routine tasks, completed in a setting free of fast-paced production requirements or strict production quotas, which setting imposes only infrequent changes in workplace tasks or duties, explained in advance of implementation.

(ECF No. 12, PageID #: 91, 94).

V.    **Law & Analysis**

A.      **Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

B.      **Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work

in light of his residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C.       Discussion

Valley raises two issues on appeal. Within the two issues are three main arguments. First, Valley argues that the appointment of Andrew Saul to the Commissioner of the Social Security Administration violated the separation of powers and rendered the ALJ's decision constitutionally defective. Second, Valley asserts that the ALJ erred by failing to find that Valley satisfied the criteria of Listing 1.02, 1.04, 11.02, or 12.00. Finally, Valley alleges multiple issues with the ALJ's RFC determination. The Court will take each one in turn.

### 1.       Valley Lacks Standing to Challenge the ALJ's Decision Based on Alleged Separation of Powers by the Commissioner

Valley asserts that "[b]ased on the fact that Andrew Saul's tenure as Commissioner of SSA was unconstitutional, and he was Commissioner at the time of the ALJ and Appeals Council decisions, this matter should be remanded for a *de novo* hearing." (ECF No. 15 at 12). Valley argues that because Acting Commissioner Saul was unconstitutionally appointed, the authority he delegated to the ALJ to hear and ultimately determine Valley's application for disability benefits was also unconstitutional. In support of this argument, Valley cites to *Seila Law LLC v.*

9

*CFPB*, 140 S. Ct. 2183 (2020) for the proposition that Saul's appointment under 42 U.S.C. § 902(a) violates the separation of powers because it limits the President's authority to remove the Commissioner without cause. The Commissioner does not dispute that the relevant removal provision "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (ECF No. 18-1 at 9 (citations omitted)). Instead, the Commissioner argues that Valley is not entitled to relief because "even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused him harm." (ECF No. 18-1 at 9 (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1787–89 (2021)). Specifically, the Commissioner argues that Valley cannot show harm to support his claim for relief because the ALJ's appointment was ratified by an Acting Commissioner who was not subject to the challenged removal restriction, and because Valley cannot show that the removal restriction caused the denial of his benefits.

Before the Court may address the substance of this argument, the Court must first determine whether Valley has standing to challenge the alleged unlawful removal provision. The Commissioner does not specifically contest Valley's standing. However, even if the parties do not challenge standing, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd*., 556 F.3d 459, 465 (6th Cir. 2009) (citations omitted).

To establish Article III standing, a plaintiff must show that he or she has suffered an "injury in fact" that is "fairly traceable" to the defendant's conduct and would likely be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations omitted) (citations and internal quotation marks omitted). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to allegedly

10

unlawful conduct of the defendant, not to the provision of law that is challenged." *Collins*, 141 S. Ct. at 1779 (internal quotation marks and citation omitted).

First, Valley argues that he has standing because the commissioner "failed to proffer any argument" that he lacked standing. (ECF No. 20 at 3). However, "[a]s a jurisdictional requirement, standing . . . cannot be waived or forfeited." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) (emphasis added). Next, Valley argues that he has standing as a "disability claimant who [] received an unfavorable decision during the administrative process[.]" (ECF No. 20 at 3 (citing *Brinkman v. Kijakazi*, 2021 WL 4462897, at *2 (D. Nev. Sept. 9, 2021) and *Sylvia v. Kijakazi*, 2021 WL 4692293, at *3 (N.D. Tex. Sept. 13, 2021))). Contrary to Valley's argument, in *Brinkman*, the court found that the plaintiff lacked standing to bring the constitutional challenge by failing to "allege facts that support a finding that her injury, the denial of disability benefits, can be or is traced to the conduct of the SSA Commissioner." 2021 WL 4462897, at *2. Citing to *Collins* and *Seila Law*, the court explained: "Because Plaintiff offers nothing that traces the decision by the ALJ in her case to any alleged injurious conduct by the SSA Commissioner, she has not demonstrated traceability and her constitutional violation claim fails for lack of standing." *Id*. Thus, *Brinkman* does not support Valley's argument.

In *Sylvia*, however, the court found that "[p]laintiff's separation-of-powers claim is both traceable and redressable such that she has standing to pursue it." *Sylvia A. v. Kijakazi*, No. 5:21-CV-076-M-BQ, 2021 WL 4692293, at *4 (N.D. Tex. Sept. 13, 2021), *report and recommendation adopted,* No. 5:21-CV-076-M-BQ, 2021 WL 4622528 (N.D. Tex. Oct. 7, 2021). The court explained that the traceability requirement was met "[b]ecause the ALJ derives authority directly from the Commissioner, and the ALJ's disability determination becomes the

11

Commissioner's final decision." 2021 WL 4692293, at *3. In so finding, the court observed that "'[i]f the removal protections afforded the Commissioner violate the constitutional requirement of separation of powers, the Commissioner has no authority to delegate.'" *Id.* (alteration in original) (citations omitted). *Sylvia*'s conclusion, however, directly conflicts with the Supreme Court's conclusion in *Collins* that the unlawfulness of a similar removal provision did not strip the relevant executive officer "of the power to undertake the other responsibilities of his office." 141 S. Ct. at 1788 n.23 (citing *Seila Law*, 140 S. Ct. at 2207–11). Accordingly, this Court does not find *Sylvia* to be persuasive. *See Rives v. Comm'r of Soc. Sec.*, No. 1:20-CV-02549, 2022 WL 1076216, at *22 (N.D. Ohio Feb. 4, 2022), *report and recommendation adopted*, No. 1:20CV2549, 2022 WL 681273 (N.D. Ohio Mar. 8, 2022); *Reese v. Comm'r of Soc. Sec. Admin.*, No. 5:20-CV-2385, 2022 WL 1090538, at *17 (N.D. Ohio Jan. 31, 2022), *report and recommendation adopted*, No. 5:20CV2385, 2022 WL 831122 (N.D. Ohio Mar. 21, 2022).

The mere receipt of an unfavorable decision is not sufficient to establish harm traceable to the alleged unlawful conduct.[1] The majority of courts having examined this issue have concluded that a party similarly situated to Valley lacks standing by failing to allege facts supporting that the denial of disability payments could be traced to the conduct of the Commissioner of the Social Security Administration. *See Walker v. Comm'r of Soc. Sec. Admin.*, No. 4:20-CV-02506-CEH, 2022 WL 1266135, at *6 (N.D. Ohio Apr. 28, 2022) (collecting cases). Therefore, Valley has failed to show compensable harm connected to the unconstitutional

---

[1] Valley also asserts that President Biden terminated Mr. Saul and noted that Mr. Saul "had undermined and politicized Social Security disability benefits." (ECF No. 20 at 5). Because of this, Valley argues that "it can be inferred that the policy adjudication framework and processes established by Mr. Saul was the primary and lead reason for President Biden's dissatisfaction." (ECF No. 20 at 5). However, again, Valley does not explain how this affected his specific case. Valley was required to trace his unfavorable decision to the unlawful conduct, and he failed to do so. This argument is, therefore, without merit.

removal provision.[2] Valley asserts that "based on the fact that Andrew Saul's tenure as Commissioner of SSA was unconstitutional, and he was Commissioner at the time of the ALJ and Appeals Council decisions, this matter should be remanded for a *de novo* hearing." (ECF No. 15 at 12). However, "the fact that the removal restriction in § 902(a)(3) is unconstitutional does not entitle [Valley] to a remand for a new hearing and decision in his case." *Klapp v. Comm'r of Soc. Sec. Admin.*, No. 5:20-CV-02850-JDG, 2022 WL 310228, at *15 (N.D. Ohio Feb. 2, 2022). As the Supreme Court in *Collins* explained, "there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office" because the removal restriction was unconstitutional. 141 S. Ct. at 1788.

Valley also asserts that "[t]he ALJ in this matter decided this case based on regulations promulgated by the Commissioner when he had no authority to issue the same. . . . This means that a presumptively inaccurate legal standard was utilized by both the ALJ and the Appeals Council to adjudicate this claim." (ECF No. 9 at 7–8). However, Valley fails to explain which regulations the Commissioner promulgated that the ALJ used to decide his case. Moreover, Valley's argument that the Commissioner had no authority to carry out the functions of office because the removal restriction was unconstitutional was rejected by the Supreme Court in *Collins*. 141 S. Ct. at 1788.

In his reply brief, Valley asserts that the Commissioner "modified the way in which musculoskeletal impairments are evaluated (DI 34121.013 and DI 34121.015)." (ECF No. 20 at

---

[2] Valley argues that the Commissioner and the courts who have decided against similarly situated plaintiffs—including this one—are wrong for concluding that the plaintiffs must show the statute at issue caused the denial of his benefits. (ECF No. 20 at 4). Instead, he states that the injury suffered is "not merely the denial of benefits" but the fact that an unconstitutional commissioner decided his application. (ECF No. 20 at 4). As explained previously, this argument is without merit.

6). However, POMS DI 34121.013 and 34121.015 became effective in April 2021 and Valley fails to explain how the changes impacted his 2019 application or 2020 hearing and decision. Valley also asserts that "while Mr. Saul was Commissioner, he implemented changes in HALLEX which modified the way in which decisions were written (I-2-3-20 in effect July 17, 2019)." (ECF No. 20 at 6). However, HALLEX I-2-3-20, sets forth ways in which the Agency notifies claimants that it received their notice of hearing forms; it does not modify the way the ALJs write their decisions. *See* Social Security HALLEX I-2-3-20, Acknowledgment of Notice of Hearing, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-3-20.html (last visited 5/17/2022). Nonetheless, Valley has not argued how those changes made it more or less likely that his application would be denied. Finally, Valley argues that he did not receive "constitutionally valid" decisions by the ALJ and the Appeals Council. Valley fails to explain the basis for these arguments. To the extent Valley again asserts a challenge to Mr. Saul's delegation authority, this challenge fails under *Collin*s, as discussed above.

None of Valley's assertions describe the type of compensable harm stemming from an unconstitutional removal provision that was described in *Collins*. Valley does not state that when his application was pending the President was unable to remove Saul from office or believed that he was unable to do so. *Collins*, 141 S. Ct. at 1789. Valley does not describe how he was harmed at the time of the ALJ's decision in August 2020 or when the Appeals Council denied his request for review in January 2021. Without a harm traceable to an unlawful action by the Commissioner, Valley does not have standing to challenge the constitutionality of § 902(a)(3). *See Rives*, 2022 WL 1076216, at *22–23.

Accordingly, Valley's constitutional challenge fails because he "has not described compensable harm due to the unconstitutional removal provision in § 902(a)(3) under which

Saul served as Social Security Commissioner." *Lynch v. Comm'r of Soc. Sec.*, No. 1:21CV0556-JDG, 2022 WL 614777, at *17 (N.D. Ohio Mar. 2, 2022); *Miley*, 2021 WL 6064754, at *1 ("[Plaintiff] lacks standing to contest the constitutionality of the ALJ's decision based on the president's removal authority.").

     **2.**      **The ALJ's Listing Determinations are Supported by Substantial Evidence**

Valley argues the ALJ erred by failing to find that Valley meets the criteria of a listing. He specifically takes issue with Listings 1.02, 1.04, 11.02, and the B criteria of 12. Generally, to meet a listing, the claimant "must satisfy all of the [listing's] criteria." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). The claimant "bears the burden of showing that an impairment meets or equals a listed impairment." *Id.* As long as the ALJ's listing finding is supported by substantial evidence, based on the record as a whole, the Court will defer to the ALJ's finding, "[e]ven if the record could support an opposite conclusion." *Id.* at *4. Moreover, if the ALJ's listing finding is not supported by substantial evidence, the error is harmless if the claimant cannot show that his impairments met or medically equaled a listing. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

As an initial matter, the Commissioner argues that Valley has waived this entire argument because he "briefly raises numerous listings the ALJ considered in her decision. [He] then rehashes objective medical evidence, but [he] never ties the medical evidence to any particular listing to demonstrate that [he] met or equaled a listing." (ECF No. 18-1 at 21 (citations omitted)). Valley did not reply to this argument. Although the Court agrees that Valley's argument leaves much to be desired, the Court finds that there was at least some effort in developing this argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed

argumentation, are deemed waived." (alteration in original) (citations omitted)). Thus, the Court

will consider the substance of the argument.

### a.     Listing 1.02—Major Dysfunction of a Joint

Listing 1.02 is:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> > A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
> >
> > B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. § 404 Subpart P, App. 1, § 1.02.

The ALJ concluded that Valley did not meet this Listing because there was no evidence of a

"gross anatomical deformity" and the medical record demonstrated a normal, unassisted gait.

(ECF No. 12, PageID #: 92). Valley does not appear to dispute these findings. He simply recites

the medical record—failing to point to any evidence of a gross anatomical deformity, an inability

to ambulate effectively, or an inability to perform fine and gross movements effectively. The

Court thus concludes that the ALJ's decision was supported by substantial evidence and, even if

it was not, Valley failed to demonstrate that he met Listing 1.02.

### b.     Listing 1.04—Disorders of the Spine

Listing 1.04 is met by evidence of a disorder of the spine such as "herniated nucleus

pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet

16

arthritis, vertebral fracture" that results in the compromise of a nerve root or the spinal cord and:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404 Subpart P, App. 1, § 1.04.

The ALJ found that Valley did not meet this listing because, despite Valley's severe lumbar spine impairment, there was no evidence of nerve root compromise—as required for all three of the listing's subparts.[3] Again, Valley does not dispute this finding and fails to point to any evidence that demonstrates that he met this listing. In fact, in the paragraph that is allegedly dedicated to this argument, he fails to even mention his lumbar spine impairment, instead focusing on his shoulder pain. The Court thus concludes that the ALJ's decision was supported by substantial evidence and, even if it was not, Valley failed to demonstrate that he met Listing 1.04.

### c.      Listing 11.02—Epilepsy

---

[3] The listing can be satisfied by either nerve root or spinal cord compromise. However, there was no evidence of—and Valley does not argue that there was—any spinal cord compromise.

17

Listing 11.02 is met by a detailed description of a typical seizure, characterized by one of the following:

> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); OR
>
> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).[4]

20 C.F.R. § 404 Subpart P, App. 1, § 11.02. Social security ruling 19-4p states that subpart B can be met by a primary headache disorder alone or in combination with another impairment. SSR 19-4P, 2019 WL 4169635, at *7. In evaluating whether a primary headache disorder meets subpart B, the ALJ considers:

> a detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.*

Valley argues that the ALJ "failed to consider whether the combination of his seizures and headaches satisfied Listing 11.02." (ECF No. 15 at 17). The Commissioner does not appear to dispute that the ALJ did not consider the combination of headaches and seizures when

---

[4] There are two other subparts that can be met to meet the listing. Valley, however, does not argue that he meets either listing. The Court, thus, does not discuss either subpart.

evaluating Listing 12.03. Indeed, upon review of the decision, the Court finds no such analysis. "[W]here, as here, the ALJ did not discuss the listing in question, the Court 'must determine whether the record evidence raises a substantial question as to [Claimant]'s ability to satisfy each requirement of the listing.'" *Wills v. Comm'r of Soc. Sec.*, No. 2:19-cv-11689, 2020 WL 1934932, at *5 (E.D. Mich. Apr. 21, 2020) (second alteration in original) (quoting *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 433 (6th Cir. 2014)). The claimant "must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing. Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citations omitted). "If a substantial question is raised, then it cannot be harmless error since the claimant could have been found disabled." *Id.* at 433 n.5.

Valley argues that "[b]ased on the frequency of his seizures and headaches, occurring at least weekly, the ALJ should have found that Valley equaled Listing 11.02 A or B." (ECF No. 15 at 18). The Court first notes that, as enumerated above, SSR 19-4 states that a primary headache disorder can meet subpart B, but does not say that it can meet subpart A. *See* SSR 19-4P, 2019 WL 4169635, at *12. Thus, to show remand is necessary, Valley must demonstrate that he meets the subpart B criteria.

Valley failed to meet his burden. Valley's argument focuses on the frequency of his seizures and headaches but fails to provide evidence that the seizures and headaches occurred despite adherence to treatment. As the ALJ pointed out, Valley was not compliant with his seizure medication. (ECF No. 12, PageID #: 92). Valley does not dispute the truth of this finding. Similarly, as the Commissioner pointed out, Valley was not compliant with medication for his

headaches. In February 2019, Valley was prescribed Topamax for headaches. (ECF No. 12, PageID #: 411). He stopped taking it shortly thereafter because his headaches subsided after completing treatment for a sinus infection. (ECF No. 12, PageID #: 586). Valley was then prescribed Topamax again in June 2019 but did not take it because "it was prescribed for a headache and he didn't need it." (ECF No. 12, PageID #: 558). Valley does not dispute the truth of these allegations but argues that the Commissioner is attempting to provide post hac rationalization for the ALJ's listing decision. Valley misunderstands the standard. Because the ALJ did not consider whether the combination of Valley's seizures and headaches met or equaled Listing 12.02, Valley must show that he can meet all of its criteria. Valley did not meet this burden. Valley simply states that this noncompliance was a result of unwanted side effects but does not dispute that he did not take his medication as prescribed. Valley does not point to a regulation, a case, or any other authority that supports his argument that the listing can be met despite noncompliance if the noncompliance was a result of side effects. Accordingly, the Court concludes that even if the ALJ erred by not considering whether the combination of Valley's headaches and seizures met Listing 12.02, the error was harmless because Valley did not demonstrate that he met all of the listing's criteria.

### d.     Listing 12—Mental Disorders

Regarding mental disorders, the ALJ considered Listing 12.02, 12.04, and 12.06. Each of these Listings have different subpart A criteria, but the same subpart B and C criteria. The ALJ concluded that Valley did not meet either of these subparts. Valley argues that he meets the subpart B criteria. Subpart B requires:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information

20

    2.   Interact with others
    3.   Concentrate, persist, or maintain pace
    4.   Adapt or manage oneself

20 C.F.R. § 404 Subpart P, App. 1, § 12.00 (citations omitted).

The ALJ considered all of the medical record and concluded that Valley did not meet the subpart B criteria. As for understanding, remembering, or applying information, the ALJ concluded that Valley had a moderate limitation. (ECF No. 12, PageID #: 93). The ALJ recognized that Valley had memory, understanding, and comprehension deficits, but reasoned that he had a normal fund of knowledge, he was able to recall five digits forward and four in reverse, and examinations showed intact memory. (ECF No. 12, PageID #: 93–94). Regarding, interacting with others, the ALJ explained that Valley denied any problems getting along with others and, in fact, consistently received visits from friends and family. (ECF No. 12, PageID #: 93). He also demonstrated normal behavior and affect and was described as "very nice" and cooperative. (ECF No. 12, PageID #: 93). Regarding concentrating, persisting, or maintaining pace the ALJ found a moderate limitation. (ECF No. 12, PageID #: 93). Although Valley described issues with completing tasks and concentrating, the ALJ relied on evidence showing no attentional deficits, average performance on a 'serial-three' subtraction task, and evidence of linear, logical thinking. (ECF No. 12, PageID #: 93). She also reasoned that neurological and psychological notes elsewhere in the record did not note any attention or concentration deficits. (ECF No. 12, PageID #: 93). Finally, as for adapting or managing oneself, the ALJ found only a moderate limitation. (ECF No. 12, PageID #: 93). She explained that Valley was assessed as exhibiting functional adaptive skills, more than adequate commonsense reasoning, adequate levels of consequential thinking and behavioral control, and adequate abilities for resolving basic daily problems. (ECF No. 12, PageID #: 93). The ALJ also relied on Valley's ability to attend to

his self-care, perform chores, shop in stores, and manage his own finances. (ECF No. 12, PageID #: 93).

Valley does not dispute the above findings. Yet again, he simply recites evidence the ALJ considered and states that he met the criteria. This is insufficient. The ALJ relied on objective medical evidence and explained why Valley did not meet the B criteria. She provided more than enough support for her conclusions, exceeding the substantial evidence requirement. Accordingly, the Court concludes that the ALJ appropriately considered the relevant listings and properly concluded that Valley did not meet any of them.

### 3.    The RFC is Supported by Substantial Evidence

Finally, Valley challenges the ALJ's RFC decision. Within this argument, Valley makes several claims. First, Valley argues the combination of his impairments preclude him from engaging in substantial gainful activity. He states that the ALJ did not consider the effect of the combination. The Social Security Act requires an ALJ to "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523(c). An ALJ's "analysis of a claimant's combined impairments is sufficient where the judge referred to a 'combination of impairments' in deciding the claimant did not meet the listings and all of the claimant's impairments were discussed individually in the decision." *Austin v. Comm'r of Soc. Sec.*, 714 F. App'x 569, 575 (6th Cir. 2018) (citing *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)). Here, that is exactly what the ALJ did.

The ALJ began her listing analysis by specifically stating that "the claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment." (ECF No. 12, PageID #: 91). Then, in developing Valley's RFC, the ALJ discussed

22

Valley's epilepsy (ECF No. 12, PageID #: 95–96), migraines/headaches (ECF No. 12, PageID #: 96–97), degenerative disc disease (ECF No. 12, PageID #: 97), knee and back pain (ECF No. 12, PageID #: 97), and anxiety and depression (ECF No. 12, PageID #: 97–98). This meets the two-part requirement noted above as the ALJ referred to a "combination of impairments" in deciding that Valley did not meet the listings and all of Valley's impairments were discussed individually in the decision. The Court, therefore, concludes that the ALJ sufficiently considered the combination of Valley's impairments. Valley's argument to the contrary is without merit.

Second, Valley incorrectly argues that the ALJ failed to consider his allegations of pain. In determining whether a claimant is disabled, the ALJ considers all of the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective evidence in the record. SSR 16-3P, 2017 WL 5180304, at *2. A claimant's subjective complaints "can support a claim for disability[] if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citations omitted). An ALJ, however, "is not required to accept a claimant's subjective complaints." *Id.* at 476 (citations omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8.  The ALJ "must clearly state [her] reasons" for discounting or rejecting a claimant's subjective complaints. *Harper v. Comm'r of Soc. Sec.*, No. 1:20-CV-1304, 2021 WL 2383833, at *11 (N.D. Ohio May 25, 2021) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)), *report and recommendation adopted*, No. 1:20-CV-1304, 2021 WL

2381906 (N.D. Ohio June 10, 2021).

Valley's subjective allegation argument is limited to his allegations of back and knee pain. He argues that "[b]ased on the ALJ's acknowledgement that he had [back and knee] pain, this case should be remanded to consider whether the effects of his pain symptoms would interfere with his ability to engage in work on a full-time and sustained basis." (ECF No. 15 at 22). He then asserts that "failure to consider the pain as supported by the objective medical findings, was harmful and necessitates that this matter be reversed or remanded." (EDCF No 5 at 22). Contrary to Valley's argument, however, the ALJ did consider whether the effects of his pain would interfere with his ability to engage in work. Specifically, regarding Valley's back and knee pain, the ALJ concluded that his allegations were not supported by the record as a whole. (ECF No. 12, PageID #: 97). The ALJ reasoned that Valley has not followed a regular course of treatment, clinical exam findings have consistently been either mildly adverse or benign—showing normal range of motion, no focal weakness, normal gait, and normal reflexes—and the radiographic studies of the lumbar spine and knee had been mainly unremarkable. (ECF No. 12, PageID #: 97). Valley does not challenge these findings, but instead incorrectly states that the ALJ did not consider whether his pain would affect his ability to work. The Court, thus, concludes that the ALJ appropriately considered Valley's allegations of back and knee pain and supported her decision not to accept them with substantial evidence.

Moreover, the Court concludes that the ALJ supported her RFC determination with substantial evidence. She relied on mainly benign or mildly adverse clinical findings, mainly unremarkable imaging, a combination of daily activities[5] inconsistent with a finding of disability,

---

[5] In passing, Valley argues that "the ability to perform some activities on a limited basis is not substantial evidence that [his] symptoms were not disabling." (ECF No. 15 at 21 (citations

24

and the state agency medical consultants' opinions. The Court is, therefore, satisfied that the ALJ followed the appropriate procedures and supported her RFC determination with substantial evidence. Accordingly, the Court concludes that there is no reason to disturb the ALJ's decision.

## VI.    Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying Valley DIB.

**IT IS SO ORDERED.**

Dated: July 5, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

omitted)). There are two issues with this argument. First, it is not clear that the ALJ concluded that because Valley could perform certain activities he was not disabled. The ALJ simply stated that the combination of Valley's activities "strongly suggest that [Valley] would be capable of engaging in the work activity contemplated by the residual functional capacity." (ECF No. 12, PageID #: 99). This suggests that his activities are merely consistent with the RFC. Second, even if the ALJ did rely on these activities to justify her RFC, the ALJ did not rely solely on Valley's ability to perform certain activities to do so. As discussed, the ALJ additionally relied on the objective medical evidence and state agency opinions—which provided substantial evidence for the RFC even without evidence of Valley's daily activities. Valley's argument is, thus, without merit.